# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| |  |
|---|---|
| BLAKE GARDENS, LLC,<br><br>                Plaintiff,<br><br>    v.<br><br>STATE OF NEW JERSEY,<br><br>                Defendant. | Civil Action No.: 17-cv-03228 (PGS)<br><br>MEMORANDUM AND ORDER |

SHERIDAN, U.S.D.J.

This matter is before this Court on Defendant's motion to dismiss for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and for failure to state a claim upon which relief may be granted, Fed. R. Civ. P. 12(b)(6). (ECF No. 15). The Complaint alleges that the State of New Jersey violated the discrimination provisions of the Federal Housing Act (FHA) and the Americans With Disabilities Act (ADA) by the State legislature's enactment of Public Law 2015, Chapter 125, approved on November 9, 2015 (2015 Act).[1] That is, Plaintiff seeks the Court to declare "the above mentioned [2015 Act] amendment to the Municipal Land Use Law (MLUL) to be in "violation of federal anti-discrimination laws" and to "annul the above mentioned [2015 Act] Amendment to the MLUL." The alleged act of discrimination is described as "removing community residences for people with Alzheimer's Disease and other forms of dementia from the list of residences permitted as of right in residential districts throughout the State as a violation of

---

[1] Effective as of June 1, 2016. The 2015 Act is referred to as the 2016 amendment in Plaintiff's Complaint.

the Federal Fair Housing Act and the Americans with Disabilities Act." (ECF No. 1, Complaint, ¶27).

Plaintiff does not identify the precise language of the 2015 Act that it challenges in its Complaint; but upon review, Plaintiff focuses mainly on one part of a far broader law that fundamentally changes the regulation of residences for persons with Alzheimer's disease and other forms of dementia. Prior to enactment of the 2015 Act, a community residence could be developed for persons with a head injury in a residential zone. After enactment of the 2015 Act, persons with Alzheimer's disease and related dementia disorders no longer fit within said class. The language in question is underscored below:

> "Person with head injury" means a person who has sustained an injury, illness, or traumatic changes to the skull, the brain contents or its coverings which results in a temporary or permanent physiobiological decrease of cognitive, behavioral, social, or physical functioning which causes partial or total disability, <u>but excluding a person with Alzheimer's disease and related disorders or other forms of dementia.</u> 2015 Act, Section 10. (emphasis in original).

A.  Narrowing the Issue

As noted above, the 2015 Act is a comprehensive law that promotes the health and safety of persons with Alzheimer's disease and related disorders, or other forms of dementia. To accomplish this goal, the New Jersey legislature mandated significant new state oversight of such facilities through the Department of Health. The 2015 Act vested the Commissioner of Health with certain authority. The 2015 Act:

1.  Transfers responsibility for the oversight of a facility that cares for persons with Alzheimer's disease and related disorders or other forms of dementia from the Department of Community Affairs (DCA) to the Department of Health (DOH);

2. Empowers the Commissioner of Health to establish standards to ensure that each dementia care home is constructed and operated in such a manner as to protect the health, safety and welfare of its residents, and preserve and promote a homelike atmosphere;

3. Authorizes the DOH Commissioner to exercise authority over dementia care homes as it oversees other DOH licensed long term health care facilities;

4. Allows the Commissioner to effectuate DOH's authority in accordance with the Health Care Facilities Planning Act. As such, the facilities and the operators are subject to DOH oversight; and

5. Requires the DOH Commissioner to review facility, architectural and engineering design and management protocols regarding:

   a. Safety from fire;
   b. Safety from structural, mechanical, plumbing, and electrical deficiencies;
   c. Adequate light and ventilation;
   d. Physical security;
   e. Protection from harassment, fraud, and eviction without due cause:
   f. Clean and reasonably comfortable surroundings;
   g. Adequate personal and financial services rendered in the facility;
   h. Disclosure of owner identification information;
   i. Maintenance of orderly and sufficient financial and occupancy records;
   j. Referral of residents, by the operator, to social service and health care providers for needed services;
   k. Assurance that no constitutional, civil, or legal right will be denied solely by reason of residence in a dementia care home;
   l. Reasonable access for employees of public and private agencies, and reasonable access for other citizens upon receiving the consent of the resident to be visited by them;
   m. Opportunity for each resident to live with as much independence, autonomy, and interaction with the surrounding community as the resident is capable of doing; and
   n. Assurance that the needs of residents of a dementia care home will be met, which shall include, at a minimum, the following:

   (1) staffing levels, which shall ensure that the ratio of direct care staff to residents in the facility is equal to or higher than that which existed on the date of enactment of P.L. , c.
   (C. ) (pending before the Legislature as this bill);

>    (2)    staff qualifications and training;
>    (3)    special dietary needs of residents;
>    (4)    special supervision requirements relating to the individual needs of residents;
>    (5)    building safety requirements appropriate to the needs of residents, including the requirement to maintain the operation 24 hours a day, seven days a week, of window, door, and any other locks or security system designed to prevent the elopement of a resident;
>    (6)     special health monitoring of residents by qualified, licensed health care professionals, including a requirement that a medical assessment by a physician be performed on a resident with special needs as described in this subsection, as determined necessary by the commissioner, prior to admission and on a quarterly basis thereafter, to ensure that the facility is appropriate to the needs of the resident; and
>    (7)    criteria for discharging residents which shall be set forth in the admission agreement, which shall be provided to the resident or the resident's representative prior to or upon admission.

2015 Act (Section 21).

Plaintiff does not challenge this new regulatory oversight by the DOH or that such residences are now subject to the DOH's long term health care facility policies. Hence, the new DOH regulatory powers are not in question in this case. Plaintiff is concerned solely with a new requirement which mandates that such facilities are subject to local municipal land use review. As such, the Court will only address that narrow issue, and whether it violates the Fair Housing Act or the Americans with Disabilities Act. *Jean v. Nelson*, 472 U.S. 846, 854 (1984). For that reason, this opinion is limited solely to the language in the 2015 Act which concerns municipal land use review.

B.    Land Use Law Prior to Enactment of 2015 Act

A brief history of the regulatory climate prior to the passage of the 2015 Act is helpful to give context to this case. In the 1970s, the New Jersey State Legislature enacted a statute that provided for community shelters that housed no more than 15 people in residential areas subject to approval of a conditional use permit from local planning boards. The statute further provided

that a planning board could deny a conditional use permit if the community shelter was located within 1,500 feet of any other community residence or whenever the population of the existing community residences exceeded 50 persons or 0.5% of the municipal population, whichever is greater. (New Jersey Public Law 1974 c. 338).

In 1988, Congress enacted the Fair Housing Amendment Act (FHAA) which extended the Fair Housing Act to protect persons with disabilities. It included persons with either mental or physical disabilities. *See Association for Advancement of the Mentally Handicapped v. City of Elizabeth*, 876 F. Supp. 614, 618 (D.N.J. 1994).

In the 1990s, there were two lawsuits filed in federal court challenging the New Jersey statute (New Jersey Public Law 1974 c. 338) as being in violation of the Fair Housing Act. In *Association for the Advancement of the Mentally Handicapped v. City of Elizabeth*, 876 F. Supp. 614 (D.N.J. 1994), Judge Ackerman reviewed a case arising in Elizabeth, New Jersey, where the municipal ordinance mandated that a conditional use permit would be automatically denied if either of the two conditions set forth in the aforementioned statute existed, and if the community residence was located within 1,500 feet of a school or a daycare center. Judge Ackerman noted that the FHAA extended the protections of the Fair Housing Act to persons with disabilities, and that the FHAA prohibits discrimination on the basis of a physical or mental handicap. *Id*. Once there is a finding of discrimination, the defendant must demonstrate a justification that serves "in theory and practice, a legitimate, bona fide interest . . . and defendant must show that no alternative course of action could be adopted that would enable that interest to be served with less discriminatory impact." *Resident Advisory Bd. v. Rizzo*, 564 F. 2d 126, 624 (3d Cir. 1977). Judge Ackerman found that there was no evidence of any justification; and that the ordinance as well as the statute on which it was based was invalid under the FHAA. As such, he enjoined the municipal

government from denying development based on the statute and the ordinance authorizing the conditional use permit.

In concert with Judge Ackerman, Judge Brotman found that an ordinance adopted in Voorhees, New Jersey had a similar impact. He noted that such ordinances "permit municipalities to impose restrictions on the housing of developmentally disabled that are not imposed on the housing of others." *ARC of New Jersey v. New Jersey*, 950 F. Supp. 637, 644 (D.N.J. 1996).

As a result of those decisions, in the late 1990s, the New Jersey legislature amended said statute to remove the conditional permit language so that the statute conformed to the above judicial decisions. The statute (N.J.S.A. 40:55D-66.1) read as follows:

> Community residences for the developmentally disabled, community shelters for victims of domestic violence, community residences for the terminally ill, <u>community residences for persons with head injuries</u>, and adult family care homes for elderly persons and physically disabled adults shall be a permitted use in all residential districts of a municipality, and the requirements therefore shall be the same for single family dwelling units located within such districts. (emphasis added).

With this statute, another related statute, N.J.S.A. 40:55D-66.2, defined the term "a community residence for persons with head injuries" as well as "a person with a head injury." The statute read:

> c. "Community residence for persons with head injuries" means a community residential facility licensed pursuant to PL. 1977, c. 448 (C.30: 11lB-1, et seq.) providing food, shelter and personal guidance under such supervision as required, to not more than 15 persons with head injuries, who require assistance, temporarily or permanently in order to live in the community, and shall include, but be limited to: group homes, halfway houses, supervised apartment housing arrangements, and hostels. Such a residence shall not be considered a health care facility within the meaning of the "Health Care Facilities Planning Act," P.L.1971, c. 136 (C.26:2H-et al).

> d. "Person with head injury" means a person who has sustained an injury, illness or traumatic changes to the skull, the brain contents or its coverings which results in a temporary or permanent physiobiogical decrease of mental, cognitive, behavioral, social or physical functioning which causes partial or total disability.

These statutes remained intact until the passage of the 2015 Act.

2015 Act – MLUL Amendment

As noted in the Complaint, the 2015 Act "removes" residences for persons with Alzheimer's disease and other forms of dementia from the type of community residences that are statutorily authorized to be developed in a residential zone. (Compl., ¶27)

The 2015 Act still allows community residences for people with head injuries to be developed in a residential zone as a right; but the 2015 Act excludes a significant portion of those citizens by excluding persons suffering with Alzheimer's or other forms of dementia. The state legislature defined Alzheimer's disease and dementia. The 2015 Act reads in part:

> f. Alzheimer's disease and related disorders means a form of dementia characterized by a general loss of intellectual abilities of sufficient severity to interfere with social or occupational functioning.
> g. Dementia means a chronic or persistent disorder of the mental processes due to organic brain disease, for which no curative treatment is available, and marked by memory disorder changes in personality, deterioration in personal care, impaired reasoning, and disorientation.
>
> "Person with head injury" means a person who has sustained an injury, illness, or traumatic changes to the skull, the brain contents or its coverings which results in a temporary or permanent physiobiological decrease of cognitive, behavioral, social, or physical functioning which causes partial or total disability, <u>but excluding a person with Alzheimer's disease and related disorders or other forms of dementia.</u> 2015 Act, Section 10. (emphasis in original).

By removing "Alzheimer's disease and related disorders or other forms of dementia" through enactment of the 2015 Act, another issue arises. That is, how is the State of New Jersey now

providing for such persons? The legislature addressed this issue by determining that it would statutorily create a new type of home for person with Alzheimer's disease and related disorders or other forms of dementia. Within the 2015 Act those new facilities are called "dementia care homes." A dementia care home is:

> a facility . . . operated under the direction . . . of an individual or corporation . . . which furnishes food and shelter to four or more persons 18 years of age or older . . . which provided dietary services, recreational activities, supervision of self-administration of medications, supervision of and assistance in activities of daily living and assistance in obtaining health services to any one or more of such persons . . . designed to meet the specific needs of residents with special needs, including, but not limited to, persons with Alzheimer's disease and related disorders or other forms of dementia. A dementia care home shall not include: a community residence for the developmentally disabled . . . 2015 Act, Section 19.

The dementia care home is a facility that is subject to the DOH's Long Term Care Planning Act. As such, under the Municipal Land Use Law, it is treated like a nursing home rather than a community shelter (2015 Act, Section 19; N.J. Rev. Stat. 26:2H-2(a)(2016)).

D.    Facts in the Complaint

Blake Gardens, LLC develops and builds community residences for people with head injuries. In the past, these residences provided housing for people with Alzheimer's disease and related disorders or other forms of dementia throughout the State of New Jersey. (Compl. ¶ 6). The residences are typically single family homes that are not considered institutions. (Compl. ¶ 7). The homes developed by Blake Gardens accommodate up to 15 people suffering with some sort of dementia. (Compl. ¶ 7-9). Residents have private bedrooms and share meals and activities;

and are provided personal care (Compl. ¶ 10-11). Blake Gardens and other developers had established over 20 such residences in New Jersey prior to the 2015 Act[2]. (Compl. ¶ 12).

Blake Gardens applied for a construction permit for a community residence for persons with head injuries including those with dementia disorders in a residential zone in Freehold, New Jersey (Compl.,¶ 20). In a letter dated March 21, 2017, Paquale Popolizio, Freehold's Zoning Official/Code Enforcement Officer, "rejected" Blake Garden's application for a construction permit. The Complaint alleges that the rejection was "on the grounds that a community residence for people with Alzheimer's disease and related disorders or other forms of dementia is no longer deemed to be permitted in a residential zoning district in Freehold as a result of the above-mentioned State's amendment of the MLUL in 2016 [2015 Act] which excluded community residences for people with Alzheimer's Disease from residential districts as of right." (Compl., ¶ 22). The Complaint fails to allege whether Blake Gardens ever filed for a land use application and/or whether such an application was approved or denied;[3] but Plaintiff avers that this action is only seeking a facial review of the statute to determine its discriminatory effects.

E.   Integral Facts Submitted by the State

In the State of New Jersey's brief, there is a reference to a document entitled <u>New Jersey Alzheimer's Disease Study Commission</u> Report, dated August 2016[4] ("Report"). As the Report is integral to the case, I considered same.[5]

---

[2]   The 2015 Act requires that residences established prior to enactment must be licensed by DOH within two years. Plaintiff has not asserted a challenge to that provision.
[3]   I grappled with the standing issue as to whether there is any harm alleged to show a case or controversy to Plaintiff; however, the thrust of the Complaint, especially the letter from Mr. Popolizio plus the Report (cited below) which details "NIMYB" reactions to homes for such persons is sufficient to show harm.
[4]   Within the Report it is noted that the Diagnostic and Statistical Manual 5th Ed. replaced the term dementia with the term neurocognitive disorders (Report at p. 12). I have referred to the disease as Alzheimer's disease and related dementia disorders to remain consistent with the statute.
[5]   On a motion to dismiss, the Court may in some instances review materials outside of the pleadings without converting the motion to dismiss into a motion for summary judgment. A court is not limited to the four corners of the complaint and may consider "matters incorporated by reference integral to the claim, items subject to judicial

The New Jersey legislature authorized the Alzheimer's Disease Study Commission ("Commission") to conduct a study of Alzheimer's disease and related dementia disorders within the State of New Jersey. (P.L. 2011, Ch. 76). The Commission's purpose was to identify and study "current issues in New Jersey associated with Alzheimer's disease and to comprehensively assess the needs of residents related to the state infrastructure of services" as well as to recommend specific policy initiatives that would address such identified needs. (Report, p. 3). The Report is comprehensive. It reviews the impacts and trends of dementia disorders by demographics, and the scope of its occurrence in New Jersey (approximately 99,000 cases). The Report also reviews the impact of dementia disorders on the family, community, and workforce, as well as on the financial and public safety of the State's medical infrastructure. It notes that persons with dementia disorders are known to engage in unsafe activities such as wandering and elopement; and that their symptoms are aggravated when they become tired (sundowning effect).

The Report addresses tangentially local concerns that arise with persons with Alzheimer's disease or related dementia disorders; but not much was stated regarding local zoning specifically. On one hand, the Report recognizes that there are local community issues such as the impact on first responders, disaster preparedness and neighborhood design (Report, p. 46-48); but on the other hand, there is only a brief mention of "not-in-my-backyard" ("NIMBY") issues that often arise between neighbors and people with dementia disorder in developing community resource locations and in building dementia disorder-friendly housing. (Report, p. 24-25). The inference to the reader is that increased scrutiny of land use applications by local planning boards may hinder development of dementia care homes due to community push back. The Report does not propose

---

notice, matters of public record, orders [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006); *See also Heine v. Dir. of Codes and Stds.*, 2017 U.S. Dist. LEXIS 146411, *15 (D.N.J. Sept. 11, 2017).

any solutions to manage potential NIMBY issues. Overall, the Report discusses Alzheimer's disease and other forms of dementia disorders in a more global perspective, not specifically addressing local zoning. While there may be justifiable reasons for requiring the exercise of zoning powers over dementia care homes, they are not thoroughly discussed in the Report.

IV.

Before this Court, the State moves to dismiss the Complaint based upon Eleventh Amendment immunity (Fed. R. Civ. P. 12(b)(1)). Before analyzing the jurisdictional issue, the scope of the Complaint is reviewed. "When reviewing a pleading, the Court must 'transcend superficialities and reach the substance of what is alleged and sought,' regardless of 'the label[s] a party affixes to its pleading.'" *Senft v. Fireman's Fund Ins. Co.*, 2015 U.S. Dist. LEXIS 61870, 2015 WL 2235098 (quoting *Wood v. New Jersey Mfrs. Ins. Co.*, 206 N.J. 562, 21 A.3d 1131, 1139 (N.J. 2011). "It is well-recognized that a court may dismiss a duplicative claim in a complaint." *Slimm v. Bank of Am. Corp.*, Civ. No. 12-5846, 2013 U.S. Dist. LEXIS 62849, 2013 WL 1867035, at *22 (D.N.J. May 2, 2013). As best as the Court can tell, Plaintiff is raising a facial challenge to the municipal land use provision of the 2015 Act, and is seeking both monetary and injunctive relief. Plaintiff's claim for monetary relief is futile. Plaintiff has not alleged any quantifiable damages that may support a claim for monetary relief, and the Complaint does not allege that any specific damage occured, such as the Freehold development being denied planning board approval. Accordingly, the claim for monetary damages is dismissed. Fed. R. Civ. P. 8(a).

With regard to Plaintiff's request for injunctive relief under the ADA and the FHA, these claims overlap. In the Complaint, Plaintiff broadly alleges discrimination under the FHA (Count I) and the ADA (Count II), submitting the same exact facts and allegations in support. As the scope of the Complaint was narrowed above, here the issue is limited to a more precise issue. By

reviewing previous case law, the prominent issue is whether excluding the development of a dementia care home in a residential area violates the Fair Housing Act. To analyze this case under the Fair Housing Act is consistent with the prior case law. See, *Association for the Advancement of the Mentally Handicapped v. City of Elizabeth*, 876 F. Supp. 614 (D.N.J. 1994); *ARC of New Jersey v. New Jersey*, 950 F. Supp. 637, 644 (DCNJ 1996). In addition, the standard to determine a violation of the ADA and the FHA are very similar, and it is best to use analogous case law. See, *In re Lapid Ventures, LLC v. Twp. of Piscataway*, Civ. No. 10-6219, 2011 U.S. Dist. LEXIS 63973, at *14 (D.N.J. June 13, 2011) (stating ". . . courts have concluded that the FHA analysis can be applied to ADA [. . .] claims as well in such cases where claims are brought under [both] statutes.")

Referring back to the motion to dismiss for lack of jurisdiction, the motion is denied because:

(1) Neither party argues that the Eleventh Amendment prohibits Plaintiff from suing the State in federal court under the Fair Housing Act for injunctive relief. *See generally, Gregory v. S. Carolina Dep't of Transp.*, 289 F. Supp. 2d 721 (D.S.C. 2003). Therefore, Count I of the Complaint, seeking equitable relief under the FHA is not barred by way of jurisdiction; and

(2) The motion concerning the allegation of monetary damages has been dismissed under Fed. R. Civ. P. 8(a).

V.

Fair Housing Act (Fed. R. Civ. P. 12(b)(6))

Generally, the FHA prohibits discrimination due to a person's disabilities or handicaps (42 U.S.C § 3604(f)(1)); and the FHA invalidates "any law of a state . . . that purports to require or permit any action that would be a discriminatory housing practice under this subchapter". 42

U.S.C. § 3615. The FHA protects a developer like Blake Gardens who develops housing for disabled persons.

When analyzing whether the 2015 Act discriminates against persons with Alzheimer's disease or other dementia disorder pursuant to the FHA, case law directs us to apply an analysis pursuant to Title VIII of the FHA:

> A plaintiff makes out a prima facie case under Title VIII, as amended by the FHA, by showing either: (1) intentional disparate treatment of the handicapped with regard to housing; or (2) disparate impact alone, without proof of discriminatory intent. *Doe v. City of Butler,* 892 F.2d 315, 323 (3d Cir.1989). A case of disparate treatment may be established against a public entity by demonstrating that a given legislative provision discriminates against the handicapped on its face, i.e. applies different rules to the disabled than are applied to others. *Larkin v. State of Mich. Dept. of Social Services,* 89 F.3d 285, 289 (6th Cir.1996); *see also Association for Advancement of the Mentally Handicapped, Inc. v. City of Elizabeth,* 876 F.Supp. 614, 620 (D.N.J.1994) ("*Elizabeth*"). A plaintiff in this instance need not prove malice or prejudice on the part of the drafters of the statute or ordinance, because the proper focus is on the explicit terms of the legislation. Federal courts have extended to Title VIII the Supreme Court's instruction in the Title VII employment context that "the absence of a malevolent motive does not convert a facially discriminatory policy into a neutral policy with a discriminatory effect." *E.g., Larkin* at 290; *Elizabeth* at 620.

*See Arc of New Jersey, Inc. v. State of N.J.*, 950 F. Supp. 637, 643 (D.N.J. 1996).

Where a plaintiff establishes that a statute is facially discriminatory, the burden shifts to the government to justify the disparate treatment. *Id. See Resident Advisory Bd. v. Rizzo*, 564 F.2d 126, 149 (3d Cir.1977), *cert. denied*, 435 U.S. 908 (1978)). Here, the State moves to dismiss the Complaint, but it has not set forth any justification stating why the legislature changed the statutory authorization for residential dementia care homes to one that requires local zoning approvals. In this Circuit, a District Court is accorded some discretion in determining whether the defendant has met its burden, but is to be guided by the following criteria:

> [A] justification must serve, in theory and practice, a legitimate, bona fide interest of the Title VIII defendant, and the defendant must show that no alternative course of action could be adopted that would enable that interest to be served with less discriminatory impact.

*Id*. "If the defendant introduces evidence that no alternative course of action could be adopted, the burden then shifts back to the plaintiff to demonstrate that other practices are available. *Arc of New Jersey, Inc.,* 950 F. Supp. at 643. Here, the State submitted the Report as an integral document; but the Report does not discuss the NIMBY issues in a thorough fashion.

From a practical standpoint, Plaintiff has a plausible claim. Common experience suggests that neighbors in a small community may be upset and object to the development of a dementia care home in their residential area. The letter from Pasquale Popolizio of Freehold Township does not specifically state such opposition, but it infers that such an objection may occur. Moreover, Popolizios' letter, plus the reference within the Report to potential "not-in-my-backyard" objections, give rise to an inference that a discriminatory effect may result from the enactment of the 2015 Act as it pertains to municipal land use review of dementia care homes. As such, the State must prove its justification.

Although Plaintiff has provided only a limited amount of alleged facts, the factual support provided shows that there is sufficient harm, and it is adequately alleged under the FHA to state a plausible cause of action. Fed. R. Civ. P. 12(b)(6). Thus, Defendant's motion to dismiss is denied.

ORDER

This matter having come before the Court on Defendant's motion to dismiss for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and for failure to state a claim upon which relief may be granted (Fed. R. Civ. P. 12(b)(6) (ECF No. 15); and for the reasons set forth above, and for good cause having been shown;

IT IS on this 15th day of February, 2018;

ORDERED that the motion to dismiss under Fed. R. Civ. P 12(b)(1) and Fed. R. Civ. P. 12(b)(6) is granted in part and denied in part; and it is further

ORDERED that the motion to dismiss the allegations in support of claims of monetary damages is granted under Fed. R. Civ. P. 8(a); and it is further

ORDERED that the motion to dismiss under the Eleventh Amendment is denied with regard to injunctive relief; and it is further

ORDERED that the motion to dismiss for failure to state a claim upon which relief may be granted is denied.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.